UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELISA MARIE
DEMBINSKY,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.
_____/

Case No. 2:18-cv-10532
District Judge Avern Cohn
Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION TO STRIKE PLAINTIFF'S OCTOBER 31, 2018 MOTION FOR SUMMARY JUDGMENT (DE 17), DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 20) and AFFIRM THE COMMISSIONER'S DECISION

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 20), and **AFFIRM** the Commissioner's decision. Moreover, the Court should **STRIKE** Plaintiff's October 31, 2018 motion for summary judgment (DE 17) as improvidently filed, because it appears to have been meant for *Duggan v. Commissioner of Soc. Sec.*, Case 2:18-cv-11125-DPH-RSW (E.D. Mich.).

## II.     REPORT

This case concerns Plaintiff's mental health limitations.  Plaintiff, Elisa Marie Dembinsky, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") that her disability ended on August 13, 2013.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 18), the Commissioner's cross-motion for summary judgment (DE 20), and the administrative record (DE 12).

### A.     Background and Administrative History

Plaintiff was born on November 9, 1994.  (R. at 121-122.)  In her disability report, Plaintiff listed attention deficit hyperactivity disorder (ADHD), learning disability, depression, and bipolar as limiting her ability to work.  (R. at 313.)  ALJ Craig R. Petersen conducted a hearing on August 4, 2011.  (R. at 78-111.)

#### 1.     In 2011, ALJ Petersen found some marked limitations in the functional areas.

On September 9, 2011, at which point Plaintiff was 16 years old, ALJ Petersen determined that Plaintiff had an impairment or combination of impairments that functionally equaled the severity of the listings.  (R. at 112-120.) In so doing, ALJ Petersen found that Plaintiff was *markedly limited* in attending and completing tasks and in interacting and relating to others.  (R. at 118-119.) Importantly, ALJ Petersen noted that medical improvement was expected with

2

<u>appropriate treatment and recommended a continuing disability review in 24 months</u>.  (R. at 120.)

Plaintiff turned 18 years old on November 9, 2012.  The Social Security Administration's August 2013 cessation notice informed Plaintiff that her last SSI payment would be for October 2013.  (R. at 123-126.)  This decision appears to have been made in conjunction with the August 7, 2013 mental RFC assessment of Ronald Marshall, Ph.D., presumably a state agency consultant.  (R. at 121, 502-505; *see also* R. at 488-501.)  On August 27, 2013, Plaintiff requested reconsideration.  (R. at 127.)  A hearing was conducted on November 21, 2014.  (R. at 128-140.)  In December 2014, a hearing officer determined that Plaintiff was not disabled.  (R. at 141-151; *see also* R. at 122.)

### 2. In 2017, ALJ Chess found moderate limitations in the functional areas.

In April 2015, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 152-158.)  On May 17, 2017, ALJ Laura Chess held a hearing, at which Plaintiff's mother, Plaintiff, and a vocational expert (VE), Susan Rowe, testified.  (R. at 38-77.)  On August 1, 2017, ALJ Chess issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-37.)  Germane to the instant appeal are her conclusions that Plaintiff had *moderate* limitations in the functional areas and that Plaintiff had certain mental health limitations.  (R. at 20-21.)

Plaintiff submitted a request for review of the hearing decision/order. (R. at 299.) However, on January 26, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1-6.) Thus, ALJ Chess's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 14, 2018.

### B.     Plaintiff's Medical History

The administrative record contains approximately 400 pages of medical records, which were available to the ALJ at the time of her August 1, 2017 decision. (R. at 35-37, 441-841 [Exhibits B1F-B17F].) These materials will be discussed in detail, as necessary, below.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ bypassed **Step 1** of the sequential evaluation process, as it is not used for redetermining disability at age 18. (R. at 16-17.) At **Step 2**, the ALJ found that, since August 13, 2013, Plaintiff has had the following severe impairments: tachycardia, dysfunctional uterine bleeding, hyperthyroidism, panic disorder, mood disorder, depressive disorder, and ADHD. (*Id*. at 17-19.) At **Step 3**, the ALJ found that, since August 13, 2013, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 19-21.) **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that, since August 13, 2013, Plaintiff had an RFC which included certain exertional, postural and environmental limitations, we well as the following mental health limitations:

> She can tolerate occasional interaction with coworkers and supervisors but no interaction with the public. The claimant can have no tandem tasks with coworkers. She retains the ability [to] perform routine and repetitive tasks, and simple tasks, defined as those that can be learned within 30 days. She can tolerate occasional decision-making or changes in the work setting. The claimant can have no production rate or pace work, such as work on an assembly line.

(*Id*. at 21-28.) At **Step 4**, the ALJ determined that Plaintiff has no past relevant work. (*Id*. at 29.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that, since August 13, 2013, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: **(1)** office helper; **(2)** inspector at the light exertional level; **(3)** machine tender; **(4)** inspector at the sedentary exertional level; **(5)** parts polisher; and, **(6)** document preparer. (*Id*. at 29-30.) The ALJ therefore concluded that Plaintiff's disability ended on August 13, 2013, and she had not become disabled again since that date. (*Id*. at 30.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

## D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

As Plaintiff would phrase it, the ALJ did not accurately characterize her mental health impairments in the hypothetical to the VE. (DE 18 at 3, 4.) Stated otherwise, Plaintiff attempts to argue that "the ALJ's conclusion at [S]tep 5 . . . is not supported by substantial evidence[,]" *Brewer v. Berryhill*, No. 2:17-CV-00297-REB, 2018 WL 4087993, *7 (D. Idaho Aug. 27, 2018). (*See* DE 18 at 6, 15.) However, in substance, Plaintiff claims that her *moderate limitations* in comprehension, memory and sustained concentration, as reflected in the February 5, 2014 mental RFC assessment of Bruce G. Douglass, Ph.D. (R. at 525-528) and

the April 27, 2017 mental limitations assessment of Amanda Graham, F.N.P. (R. at 835, 841), are not adequately addressed by the RFC's mental health limitations (R. at 21).

It must be borne in mind that "during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). *See also, Young v. Secretary of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Secretary of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987). Although Plaintiff purports to frame her statement of error as a challenge to the ALJ's Step 5 determination, this is in reality a "veiled attack" on the ALJ's underlying RFC finding, since the mental health hypothetical posed to the vocational expert in this matter is essentially identical to the RFC. *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding[,]" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

The Commissioner contends that the ALJ "accurately characterized Plaintiff's mental impairments in the hypothetical to the VE[.]"  (DE 20 at 6-13.)  As can be seen below, the ALJ's hypothetical is consistent with the mental health RFC, and, as to the true issue here, the RFC was supported by substantial evidence or, at least, Plaintiff has failed to show otherwise.

### 1. The ALJ's mental health RFC is consistent with the hypotheticals used at the administrative hearing.

At Step 2, the ALJ determined that Plaintiff's severe impairments included panic disorder, mood disorder, depressive disorder, and ADHD.  (R. at 17.)  At Step 3, although the ALJ determined that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.04, 12.06 and 12.11, the ALJ also determined that Plaintiff had or had experienced moderate limitations in:  **(a)** understanding, remembering, or applying information; **(b)** interacting with others; **(c)** concentrating, persisting, or maintaining pace; and **(d)** adapting or managing oneself.  (R. at 20.)  Then, in assessing Plaintiff's RFC, the ALJ noted:

> She can tolerate occasional interaction with coworkers and supervisors but no interaction with the public.  The claimant can have no tandem tasks with coworkers.  She retains the ability [to] perform routine and repetitive tasks, and simple tasks, defined as those that can be learned within 30 days.  She can tolerate occasional decision-making or changes in the work setting.  The claimant can have no production rate or pace work, such as work on an assembly line.

(R. at 21.)

These mental health RFC limitations are consistent with those posed in the combined first and second hypotheticals or in the third hypothetical.  (R. at 67-70.)  Moreover, the VE's testimony with respect to the third hypothetical is consistent with the available jobs listed by the ALJ at Step 5.  (*Compare* R. at 69-70, *with* R. at 29.)  Thus, absent a successful challenge to the ALJ's *mental RFC assessment*, or some type of error in the *VE's substantive testimony*, the ALJ's Step 5 finding is supported by substantial evidence.

## 2. Plaintiff has not shown error in the ALJ's mental RFC assessment.

Plaintiff cites the February 5, 2014 mental RFC assessment of Bruce G. Douglass, Ph.D. (R. at 525-528) and the April 27, 2017 mental limitations assessment of Amanda Graham, F.N.P. (R. at 835, 841) in support of her argument.  (DE 18 at 4.)  However, the ALJ assigned "partial weight" to each of these opinions (R. at 26-27), seemingly including Dr. Douglass's accompanying psychiatric review technique (R. at 529-542).  (R. at 26-27.)  In sum, the ALJ:  **(a)** found that Plaintiff had moderate limitations in four functional areas at Step 2 (R. at 20); **(b)** within the RFC discussion of the opinion evidence, noted Dr. Douglass's opinions that Plaintiff "had mild to moderate impairment in concentration, persistence, and pace[,]" as well as "moderate difficulties in maintaining social functioning . . .[,]" (R. at 27, 525-526, 539); and, **(c)** ultimately,

assessed the aforementioned, myriad mental health limitations (R. at 21). Plaintiff has not shown that or how the ALJ errantly interpreted this evidence.

More to the point, as the Commissioner correctly points out, a substantial portion of Plaintiff's brief bears a <u>striking resemblance</u> to Chief U.S. Magistrate Judge Ronald E. Bush's memorandum decision and order in *Brewer v. Berryhill*, No. 2:17-CV-00297-REB, 2018 WL 4087993 (D. Idaho Aug. 27, 2018). (DE 20 at 6 n.3.) In fact, entire paragraphs in Plaintiff's brief were literally cut from Judge Bush's opinion and pasted into Plaintiff's brief without attribution or application, *even without changing the internal record citations* so that they would bear at least a minimal connection to the case at bar. It was a dead give-away in spots where Plaintiff's brief cites to "Pet[itioner]'s Brief." (*See*, *e.g.*, DE 18 at 7, 8, 10, 13.)[2] For example, Plaintiff's 6-page "discussion" section consists of approximately 2.5 pages of the VE's testimony, with the remaining 3.5 pages lifted from *Brewer*. (*Compare* DE 18 at 10-15, *with* Brewer, 2018 WL 4087993, *4-*7.) In other places, where the briefing is actually tailored to this case, no record citation is

---

[2] Given the aforementioned error that caused the filing of Plaintiff's amended motion for summary judgment, I considered the possibility that Plaintiff mistakenly filed this brief on October 31, 2018. Even if that were the case, she did not answer the Commissioner's January 9, 2019 charge by way of filing a reply, which the Court had given her until January 19, 2019 to do. How the Court was supposed to review the portions of the record cited in Plaintiff's brief which come from another case in Idaho, short of going on a wild goose chase, is anyone's guess.

supplied.  (*See*, *e.g.*, DE 18 at 8-12.)  This type of lazy briefing is a disservice to the client and, frankly, wastes the Court's time.  If Plaintiff's counsel is not invested enough to carefully apply the law to the actual record in this case, the Court cannot be expected to dig through the record and do so on Plaintiff's behalf.[3]

### F. Conclusion

If Plaintiff intended to show that "neither the hypothetical questions nor the answers properly set forth all of [her] impairments," (DE 18 at 6), she has failed to do so.  Plaintiff has the burden of proof on her statement of error with respect to the RFC.  *Walters*, 127 F.3d at 529.  Plaintiff has not shown legal error in the ALJ's mental RFC assessment, and the ALJ's Step 5 finding is supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 20), and **AFFIRM** the Commissioner of Social Security's decision.

### III. PROCEDURE ON OBJECTIONS

---

[3] *See Davis v. Comm'r of Soc. Sec.*, No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("[T]he Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, No. 15-cv-12644, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 1, 2019                    s/*Anthony P. Patti*
                                                    Anthony P. Patti
                                                    UNITED STATES MAGISTRATE JUDGE